[Cite as *State v. Coleman*, 2017-Ohio-2826.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case Nos. 16CA3555 |
| | : | 16CA3556 |
| Plaintiff-Appellee, | : | 16CA3557 |
| | : | 16CA3558 |
| vs. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| WALLACE L. COLEMAN, | : | <u>ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | **Released: 05/11/17** |

_____
APPEARANCES:

Angela Miller, Jupiter, Florida, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Assistant Ross County Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

McFarland, J.

{¶ 1} This is an appeal from a Ross County Court of Common Pleas judgment entry sentencing Appellant, Wallace Coleman, after he entered pleas of guilt to one count of bribery, a third degree felony in violation of R.C. 2921.02, one count of complicity to bribery, a third degree felony in violation of R.C. 2923.03, one count of kidnapping, a first degree felony in violation of R.C. 2905.01, one count of felonious assault, a second degree felony in violation of R.C. 2903.12, and one count of possession of cocaine, a fifth degree felony in violation of R.C. 2925.11.  On appeal, Appellant

contends that 1) his plea was obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution and Crim.R. 11(C); and 2) the trial court abused its discretion and committed reversible error in overruling his motion to withdraw his guilty pleas.

{¶ 2} Because we conclude that the trial court did not err in accepting Appellant's guilty pleas, which were knowingly, voluntarily and intelligently given, his first assignment of error is overruled. Because we conclude that the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty pleas, his second assignment of error is overruled. Accordingly, having found no merit in the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

## FACTS

{¶ 3} On August 18, 2015, Appellant, Wallace Coleman, was charged with one count of possession of cocaine, which stemmed from the execution of a search warrant at his residence. On August 28, 2015, Appellant was charged with one count of kidnapping and one count of felonious assault.[1] After a review of the record, the circumstances that led to the filing of the charges are unclear; however, it appears the victim of the crimes was an

---

[1] A supersedeas indictment was later filed as to both of these charges, which added repeat violent offender specifications to each charge.

adult male, Arthur Hamlin, Jr.  Appellant was later charged with one count of bribery on November 20, 2015 and then was charged with complicity to bribery on December 11, 2015.  It appears the latter two charges involved calls made by Appellant from a recorded telephone line in the jail to two different individuals.  All of these charges were brought by way of secret indictment.  Appellant pleaded not guilty to the charges at each of his arraignments and the matter proceeded to trial, though they were not consolidated at the trial court level.

{¶ 4} On January 4, 2016, a change of plea hearing was held in which Appellant entered pleas of guilt to all of the charges.  Of note, the State did not make a presentation of evidence regarding the basis for the charges and the trial court did not make any factual determinations before accepting Appellant's guilty pleas.  As such, this Court has a limited understanding of the facts that form the basis of the charges to which Appellant pleaded guilty.  Appellant's counsel subsequently withdrew from representation and on March 28, 2016, with the aid of newly appointed counsel, Appellant filed a motion to withdraw his guilty pleas.  A hearing was held on Appellant's motion on April 21, 2016, at which Appellant was present and testified regarding his reasons for seeking withdrawal of his pleas.  At the conclusion of the hearing, the trial court found Appellant's testimony not credible and

that Appellant's motion was based upon nothing more than a case of "buyer's remorse."  The trial court then denied the motion and the matter proceeded to sentencing on May 6, 2016.  It is from the final sentencing order that Appellant now brings his timely appeal, setting forth two assignments of error for our review.

## ASSIGNMENTS OF ERROR

"I.     APPELLANT'S GUILTY PLEA WAS OBTAINED IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND CRIM.R. 11(C).

II.     THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN OVERRULING COLEMAN'S MOTION TO WITHDRAW HIS GUILTY PLEA."

## ASSIGNMENT OF ERROR I

{¶ 5} In his first assignment of error, Appellant contends that his guilty plea was obtained in violation of the Fifth and Fourteenth Amendments to the United States and Ohio Constitutions and Crim.R. 11(C).  Appellant specifically argues that the trial court did not adequately advise him of his right to compulsory process to obtain witnesses in his favor.  The State contends that the trial court's advisement regarding the waiver of his right to compulsory process was adequate, and also notes that Appellant signed a written plea agreement that contained a more detailed advisement.  The State further notes that when questioned by the trial court

as to his understanding of the written agreement and the oral advisement, Appellant indicated he understood.

{¶ 6} The ultimate inquiry when reviewing a trial court's acceptance of a guilty plea is whether the defendant entered the plea in a knowing, intelligent, and voluntary manner. *See State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7; citing *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).  A defendant enters a plea in a knowing, intelligent, and voluntary manner when the trial court fully advises the defendant of all the constitutional and procedural protections set forth in Crim.R. 11(C) that a guilty plea waives. *See State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25; citing *Engle* at 527; *State v. Eckler*, 4th Dist. Adams No. 09CA878, 2009-Ohio-7064, ¶ 48.  Thus, when a court reviews a trial court's acceptance of a guilty plea, it must independently review the record to ensure that the trial court followed the dictates of Crim.R. 11(C). *See State v. Kelley*, 57 Ohio St.3d 127, 128, 566 N.E.2d 658 (1991) ("When a trial court or appellate court is reviewing a plea submitted by a defendant, its focus should be on whether the dictates of Crim.R. 11(C) have been followed."); *Eckler* at ¶ 48 (noting that standard of review is de novo); *State v. Hamilton*, 4th Dist. Hocking No. 05CA4, 2005-

Ohio-5450, ¶ 9; *see also State v. Gilmore*, 8th Dist. Cuyahoga Nos. 92106, 92107, 92108, and 92109, 2009-Ohio-4230, ¶ 12.

{¶ 7} Crim.R. 11(C)(2)(a)-(c) sets forth the process a trial court must follow before accepting a guilty plea. The rule prohibits a trial court from accepting a guilty plea unless the court personally addresses the defendant and (1) determines "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing"; (2) informs "the defendant of and determin[es] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence"; and (3) informs "the defendant and determin[es] that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

{¶ 8} When a trial court engages in a plea colloquy with the defendant, it must strictly comply with Crim.R. 11(C)(2)(c), which sets forth

the constitutional rights a guilty plea waives. Thus, the trial court must explain to the defendant, either literally or in a reasonably intelligible manner, that a guilty plea waives (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require the state to prove guilt beyond a reasonable doubt, and (5) the privilege against compulsory self-incrimination. *Veney* at syllabus and ¶¶ 18, 27 (stating that trial court must literally comply with Crim.R. 11(C)(2)(c), but its failure to do so will not invalidate a plea when the trial court adequately conveys the information to the defendant in a reasonably intelligible manner). Failure to do so renders the plea invalid. *Id.* at syllabus.

{¶ 9} "The best way to ensure that pleas are entered knowingly and voluntarily is to simply follow the requirements of Crim.R. 11 when deciding whether to accept a plea * * *." *Clark* at ¶ 29; *State v. Ballard*, 66 Ohio St.2d 473, 479, 423 N.E.2d 115 (1981) (stating that "the best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty"). Thus, " '[l]iteral compliance with Crim.R. 11, in all respects, remains preferable to inexact plea hearing recitations.' " *Clark* at

¶ 29; quoting *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19, fn. 2. However, "a rote recitation of Crim.R. 11(C) is not required, and failure to use the exact language of the rule is not fatal to the plea." *Ballard* at 480. Instead, the trial court need only "explain[ ] or refer[ ]" to the Crim.R. 11(C) protections "in a manner reasonably intelligible to that defendant." *Id*.; *see also Veney* at ¶ 27 (stating that "a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant"). Thus, a reviewing court should not invalidate a plea merely because a trial court did not engage in a "formalistic litany of constitutional rights." *Ballard* at 480.

{¶ 10} A trial court "may not relieve itself of the requirement of Crim.R. 11(C) by exacting comments or answers by defense counsel as to the defendant's knowledge of his rights." *Id.* at 481. However, a reviewing court may consider "such a colloquy * * * in the totality of the matter." *Id*. Thus, if the record shows that the trial court ascertained that defense counsel advised the defendant of his rights, a reviewing court may consider this as a factor in determining whether the totality of the circumstances supports the trial court's finding that the defendant knowingly, intelligently, and

voluntarily entered the plea. *Id*. (noting that "the record shows that the trial judge initially ascertained from the defense counsel that the defendant had been advised of his rights"); *State v. McKenna*, 11th Dist. Trumbull No. 2009-T-0034, 2009-Ohio-6154, ¶ 67; *State v. DeArmond*, 108 Ohio App.3d 239, 245, 670 N.E.2d 531 (1995); quoting *Riggins v. McMackin* (C.A.6, 1991), 935 F.2d 790, 795 (construing Ohio Crim.R. 11), and citing *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, fn.3 (1970) (stating that inquiry into whether the trial court properly advised a defendant of the constitutional rights "is not limited solely to the information provided to the defendant by the trial court. We examine the totality of the circumstances surrounding the plea. 'A defendant may learn of information not relayed to him by the trial court from other sources, such as his attorney' "); *State v. Diaz*, 9th Dist. Lorain No. 92CA5499, 1993 WL 186716, (June 2, 1993).

{¶ 11} In *State v. Saaty*, 10th Dist. Franklin No. 96APA06-777, 1997 WL 101654 (Mar. 4, 1997) the court applied this principle and concluded that although a defense counsel's representation that counsel advised the defendant of his rights may constitute additional evidence that the court explained the right in a manner reasonably intelligible to the defendant, it cannot substitute for the court's compliance with the rule when the court utterly fails to mention one of the constitutional rights. The court stated:

" * * * [W]hile defense counsel advised the trial court he read aloud the plea forms to defendant and in his opinion defendant understood them, counsel's actions cannot excuse the trial court's failure to specifically inform defendant he was waiving his right to a jury trial. In response to questioning from the trial court, defense counsel in *Ballard* stated he had explained to defendant his constitutional rights, and he believed defendant understood them. The *Ballard* court considered defense counsel's representations as additional proof that the trial court had meaningfully informed defendant of his right to a jury trial, stating, '[a]lthough the trial court may not relieve itself of the requirement of Crim.R. 11(C) by exacting comments or answers by defense counsel as to the defendant's knowledge of his rights, such a colloquy may be looked to in the totality of the matter.' *Ballard, supra,* at 481.

Thus, where the trial court makes only an indirect or 'glancing' reference to a constitutional right, a defense counsel's representation that he informed a defendant of his constitutional rights can be 'looked to in the totality of the matter' in determining whether the trial court explained or referred to a constitutional right in a manner reasonably intelligible to that defendant. However, where the trial court has completely omitted mentioning a right specified in *Boykin* and *Ballard*, defendant's counsel's representation is not sufficient; defendant's plea is invalid and must be vacated. *See* [*State v.*] *Sturm* [66 Ohio St.2d 483, 422 N.E.2d 853 (1981)]. Here, the trial court did not refer to the right to a jury trial in any manner. As Ballard dictates, the trial court's exacting comments or answers from defendant's attorney did not relieve it from the mandate of Crim.R. 11(C). *Id.*"[2]

---

[2] In *State v. Strawther*, 56 Ohio St.2d 298, 301, 383 N.E.2d 900, the Supreme Court of Ohio noted that "the right to compulsory process is not declared by *Boykin* to be a constitutional right requiring waiver to appear upon the record." However, three years later, the Supreme Court of Ohio, in *State v. Ballard, supra,* at FN. 4 noted that although *Boykin* did not mention the right of a defendant to have compulsory process of witnesses to testify on his behalf, because the right is guaranteed by the Sixth Amendment to the United States Constitution and is like the other rights mentioned in *Boykin*, and therefore held "that the defendant must also be informed of his right to compulsory process." Thus, *Strawther* has been expanded to include the right to compulsory process.

**{¶ 12}** With the foregoing principles in mind, we turn to Appellant's specific argument that the trial court failed to adequately advise him of his constitutional right to compulsory process.  In the case at bar, the trial court engaged in the following colloquy with Appellant regarding the waiver of his constitutional right to compulsory process:

> "THE COURT:  Alright.  I've been given a two page plea agreements [sic] in each of these case [sic] that appears to have been signed by you and your attorney.  Is that in fact your signature?
>
> COLEMAN:  Yes sir.
>
> THE COURT:  Did you read these agreements?
>
> COLEMAN:  Yes sir.
>
> THE COURT:  Did you understand them?
>
> COLEMAN:  Yes sir.
>
> THE COURT:  Are you satisfied with the advice and counsel of your attorney?
>
> COLEMAN:  Yes sir.
>
> * * *
>
> THE COURT:  Do you understand that you have the right to compulsory process?
>
> COLEMAN:  Yes sir.
>
> * * *

> THE COURT:  Do you have any questions for me before we proceed?
>
> COLEMAN:  No sir."

The record further reflects that each written plea agreement Appellant signed stated as follows with the respect to Appellant's right to compulsory process:

> "I understand by pleading guilty I give up my right to a jury trial where I could see and have my attorney question witnesses against me, and where I could use the power of the Court to call witnesses to testify for me. * * *"

Thus, it appears the trial court orally advised Appellant he was waiving his right to "compulsory process," but did not further state "for obtaining witnesses in the defendant's favor."  Additionally, the written plea agreement utilizes the phrase "power of the Court," but does not use the phrase "compulsory process" or "subpoena."

{¶ 13} This Court has recently considered the adequacy of a trial court's explanation of the defendant's right to compulsory process in *State v. McDaniel*, 4th Dist. Vinton No. 09CA677, 2010-Ohio-5215, and also *State v. Pigge*, 4th Dist. Ross No. 09CA3136, 2010-Ohio-6541.  In *McDaniel*, the trial court did not use the phrase "compulsory process" but rather explained to the defendant as follows with regard to his right to compulsory process: "you're waiving your right to bring in your own witnesses to subpoena those witnesses if necessary, to come in as a part of your defense.  Do you

understand you are waiving that right?" *Id.* at ¶ 16.  McDaniel argued that the trial court's explanation "did not sufficiently inform him that he could compel witnesses to testify." *Id*. at ¶ 17.  We rejected McDaniel's argument and noted that other Ohio courts have found similar statements sufficient to explain a defendant's right to compulsory process. *Id.*; citing *State v. Ward*, 2nd Dist. Montgomery No. 21044, 2006-Ohio-832, ¶ 12 (court's statement that the defendant was giving up his right to have his own witnesses come and testify was "adequate, if less than ideal" when informing him of compulsory process right); *State v. Anderson* , 108 Ohio App.3d 5, 11-12, 669 N.E.2d 865 (1995) (finding that "[y]ou are giving up your right to call witnesses on your own behalf" informed the defendant of compulsory process right in a reasonably intelligible manner); *State v. Thomas*, 10th Dist. Franklin No. 04AP-866, 2005-Ohio-2389, ¶ 9 (finding that "right to have your witnesses, should you have any, subpoenaed to the courtroom" informed the defendant of compulsory process right in a reasonably intelligible manner).

{¶ 14} In *Pigge*, the trial court orally advised the appellant as follows regarding the waiver of his right to compulsory process:

"The Court:  You also have the right to compulsory process.
That means you have the right to have subpoena's [sic] issued
for any witness that you want to appear on your behalf in court.

B[y] pleading guilty you are giving up that right.  Do you understand that?" *Pigge* at ¶ 7.

The trial court then asked the appellant if he had reviewed and understood the guilty plea petition, which stated that he had "the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in [his] favor." *Id.* at ¶ 8.

{¶ 15} Thus, like the case sub judice, the trial court in *Pigge* utilized the phrase "compulsory process," but did not further state the exact wording contained in Crim.R. 11 (C)(2)(c) "for obtaining witnesses in the defendant's favor."  Nonetheless, we found the language used in *Pigge*, during the oral advisement as well as the written plea form, adequately advised the appellant of the waiver of his right to compulsory process in a reasonably intelligent manner, especially where the trial court questioned the appellant as to his understanding and he claimed he understood.[3] *Id.* at ¶¶ 22, 24-25. More specifically, we found that the trial court's use of the phrase "compulsory process" constituted both literal and strict compliance with Crim.R. 11, and that the use of that phrase "mirrors the language used in Crim.R. 11." *Id.* at ¶ 22; quoting *State v. Senich*, 8th Dist. Cuyahoga No. 82581, 2003-Ohio-5082; citing *State v. Strawther, supra* (stating that the use

---

[3] In *Pigge*, we noted the appellant was mentally impaired but nevertheless found the advisement to be satisfactory.  There is no such element present sub judice.

of the term "compulsory process" was sufficient to explain the right.). We essentially reasoned that such reference was enough, and that the trial court went a "step further" by explaining the right in a manner reasonably intelligible to the defendant. *Id.* at ¶ 23.

{¶ 16} Prior to reaching our decision in *Pigge*, we noted our prior observation in *McDaniel* that:

> "We further observed that some Ohio courts 'have required the trial court to specifically inform the defendant of the power to compel the attendance of witnesses.' *Id.* at ¶ 18, citing *State v. Gardner*, Lorain App. No. 08CA009520, 2009-Ohio-6505, at ¶ 9 (court failed to reasonably apprise defendant of compulsory process right because it did not inform him that he could use the court's subpoena power to compel witnesses' attendance); *State v. Parks*, Cuyahoga App. No. 86312, 2006-Ohio-1352, at ¶ 17 (stating that trial court 'clearly informed' defendant of compulsory process right by stating that defendant had a right to subpoena witnesses); *State v. Wilson*, Cuyahoga App. No. 82770, 2004-Ohio-499, at ¶ 16 ('The trial court must inform a defendant that it has the power to force, compel, subpoena, or otherwise cause a witness to appear and testify on the defendant's behalf. Otherwise, the logical import of the court's notice is that the defendant could present such witnesses as he could only secure through his own efforts.') (emphasis sic); *see, also*, *State v. Rosenberg*, Cuyahoga App. No. 84457, 2005-Ohio-101, at ¶ 14 (stating that 'strict compliance with Crim.R. 11(C) requires the trial court to inform the defendant that witnesses could be "forced," "subpoenaed," "compelled," "summoned," or "required" to appear' and that '[m]erely advising a defendant that he has "the right to bring in witnesses to this courtroom to testify for your defense' is insufficient to apprise a defendant of this constitutional right to compulsory process" '); *State v. Cummings*, Cuyahoga App. No. 83759, 2004-Ohio-4470 (holding that informing defendant he had a

right to 'call witnesses' did not sufficiently advise him of compulsory process right)." *Pigge* at ¶ 20.

{¶ 17} Here, however, we conclude that the trial court's oral advisement during the plea colloquy that Appellant was waiving his right to "compulsory process," coupled with the fact that Appellant signed, with the benefit of counsel, a written plea agreement which further stated "I understand by pleading guilty I give up my right to a jury trial where I could see and have my attorney question witnesses against me, and where I could use the power of the Court to call witnesses to testify for me. * * *[,]" adequately advised Appellant he was waiving his right to compulsory process for obtaining witnesses in his favor. *Pigge* at ¶ 25 ("the plea petition may be used as additional evidence that the defendant understood what the court meant by the terms 'compulsory process' and 'subpoena.' "); citing *Ballard, supra.* In our view, the trial court's use of the phrase in the plea agreement "power of the Court to call witnesses" more clearly conveys the meaning of "compulsory process" than the use of the word "subpoena" to a layperson.

{¶ 18} Further as set forth above, when determining whether a trial court strictly complied with Crim.R. 11 with regard to constitutional advisements, a reviewing court must examine the totality of the circumstances surrounding the plea, and is not limited to the information

provided by the trial court during the oral colloquy. *Pigge* at ¶ 17.  This

standard was recently reaffirmed by the Supreme Court of Ohio in *State v.*

*Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 43

("where a trial court engages in a full Crim.R. 11 plea colloquy with the

defendant and addresses all of the constitutional rights waived by the plea, a

'reviewing court should be permitted to consider additional record evidence

to reconcile any alleged ambiguity [in the colloquy].' "); citing *State v.*

*Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 24.

{¶ 19} Moreover, and similar to the facts before us in *Pigge*,

Appellant, when questioned by the trial court as to whether he had read and

understood the plea agreement he had signed, advised he did.  Appellant

again advised the trial court he understood the oral plea colloquy that

occurred thereafter.  Here, the trial court literally complied with Crim.R. 11

by using the exact phrase "compulsory process" and also provided a

reasonably intelligent explanation of that term through the written plea

agreement, which explained the "power of the Court to call witnesses."  As

reasoned in *Pigge*, " 'if the defendant receives the proper information, then [a

court] can ordinarily assume that [the defendant] understands that

information.' " *Pigge* at ¶ 24; quoting *State v. Carter*, 60 Ohio St.2d 34, 38,

396 N.E.2d 757.  Further, as we also reasoned in *Pigge*, if Appellant did not

understand what the court meant by use of the term "compulsory process" or "power of the Court," he should have advised the trial court when asked. Finally, we note that in *Pigge*, we reasoned that "allowing a defendant to state in open court that he understood a Crim.R. 11(C) right, but then argue on appeal that he did not, would contravene the general principle that guilty pleas should be final." *Pigge* at ¶ 33; citing *Ballard* at 479.

{¶ 20} Thus, in light of the foregoing and considering the totality of the circumstances, we find no error in the trial court's acceptance of Appellant's guilty plea, and find that Appellant voluntarily, knowingly and intelligently pleaded guilty to the offenses of which he was charged. Accordingly, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶ 21} Appellant contends in his second assignment of error that the trial court committed reversible error in overruling his motion to withdraw his guilty plea. In particular, he argues that he received ineffective assistance of counsel prior to entering the plea, felt pressured to plead guilty rather than take his case to trial, and is actually innocent of the charges. The State contends that Appellant has failed to prove his counsel provided deficient representation, and notes that the court conducted a lengthy colloquy with Appellant before accepting his guilty pleas. It is the State's

position that Appellant's desire to withdraw his guilty pleas is nothing more than a change of heart.

{¶ 22} Initially, we note that trial courts possess discretion when deciding whether to grant or to deny a presentence motion to withdraw a guilty plea. *E.g.*, *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992), paragraph two of the syllabus. Thus, absent an abuse of discretion, appellate courts will not disturb a trial court's ruling concerning a motion to withdraw a guilty plea. *Id*. at 527. " 'A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *State v. Keenan*, 143 Ohio St.3d 397, 38 N.E.3d 870, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7; quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion includes a situation in which a trial court did not engage in a " 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14; quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Moreover, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34.

{¶ 23} Crim.R. 32.1 states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct

manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Thus, Crim.R. 32.1 permits a defendant to file a motion to withdraw a guilty plea before sentence is imposed. " '[A] presentence motion to withdraw a guilty plea should be freely and liberally granted.' " *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 57; quoting *State v. Xie* at 527.

{¶ 24} While trial courts should "freely and liberally" grant a presentence motion to withdraw a guilty plea, a defendant does not "have an absolute right to withdraw a guilty plea prior to sentencing." *State v. Xie* at 527; *accord State v. Ketterer* at ¶ 57; *State v. Spivey*, 81 Ohio St.3d 405, 415, 692 N.E.2d 151 (1998); *State v. Wolfson*, 4th Dist. Lawrence No. 02CA28, 2003-Ohio-4440, ¶ 14. Instead, "[a] trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie* at paragraph one of the syllabus; *accord State v. Boswell*, 121 Ohio St.3d 575, 906 N.E.2d 422, 2009-Ohio-1577, ¶ 10, superseded by statute on other grounds as stated in *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958. While a trial court possesses discretion to determine whether to grant or to deny a presentence motion to withdraw a guilty plea, it does not have discretion to determine if a hearing is required. *See Wolfson* at ¶ 15. Here, the trial court held a

hearing and Appellant raises no argument with respect to the provision of the hearing.

**{¶ 25}** We have previously set forth a list of factors that we consider when determining whether a trial court abused its discretion by denying a presentence motion to withdraw a plea: " '(1) whether the accused was represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the withdrawal motion, and (4) whether the trial court gave full and fair consideration to the motion.' " *State v. Campbell*, 4th Dist. Athens No. 08CA31, 2009-Ohio-4992, ¶ 7; quoting *State v. McNeil*, 146 Ohio App.3d 173, 176, 765 N.E.2d 884 (1st Dist.2001). Other considerations include: " '(1) whether the motion was made within a reasonable time; (2) whether the motion set out specific reasons for the withdrawal; (3) whether the accused understood the nature of the charges and the possible penalties; and (4) whether the accused was perhaps not guilty or had a complete defense to the charges.' " *Id.*; quoting *McNeil* at 176. However, a change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw the plea. *Id.*; citing *State v. Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988).

{¶ 26} Further, with respect to Appellant's ineffective assistance of counsel claim raised within this assignment of error, we note that criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, (1970), fn.14; *State v. Stout*, 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). In addition, in *Xie*, the Ohio Supreme Court stated as follows at 524:

> "The *Strickland* test was applied to guilty pleas in *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203. 'First, the defendant must show that counsel's performance was deficient.' *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Hill,* 474 U.S. at 57, 106 S.Ct. at 369, 88 L.Ed.2d at 209. Second, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty * * *.' *Hill*, 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 210; *see Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693."

{¶ 27} "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.' " *State v. Walters*, 4th Dist. Washington Nos. 13CA33, 13CA36, 2014-Ohio-4966, ¶ 23; quoting *Strickland* at 689. "Thus, 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Id*.; quoting *Strickland* at 689. " 'A properly licensed attorney is presumed to execute his duties in an ethical and competent manner.' " *Id*.; quoting *State v. Taylor*, 4th Dist. Washington No. 07CA1, 2008-Ohio-482, ¶ 10. "Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." *Id*.

{¶ 28} We first address Appellant's claim of ineffective assistance of counsel with respect to his decision to enter pleas of guilt to all five charges. Appellant contends that but for counsel's advice, he would not have entered the guilty pleas and would have taken his cases to trial. He argues that he received ineffective assistance of counsel in that he felt pressured by counsel to enter guilty pleas, his attorney failed to thoroughly interview important witnesses, and disregarded evidence that would show his innocence. Appellant argues that instead of preparing a defense, his attorney pressured him into "accepting an unappealing plea by informing him he would get

thirty-five years in prison if he did not accept the state's offer quickly and plead guilty to all charges."

{¶ 29} A review of the record indicates that Appellant's trial counsel withdrew from the case just after Appellant entered pleas of guilty. Appellant thereafter, with benefit of new counsel, filed a motion to withdraw his guilty pleas. Appellant was afforded a full hearing on his motion where he was permitted to testify regarding his reasons for seeking to withdraw his pleas. Although Appellant claims that his trial counsel pressured him into pleading guilty, the transcript from the hearing indicates that Appellant conceded as follows on cross examination:

> "MARKS: Now when Chase [Appellant's trial counsel] had told you that if you didn't take the plea for the fourteen years you could get up to thirty-five, that was actually a possible sentence that you could have received based upon crimes you were charged with, correct?
>
> COLEMAN: Yes, sir.
>
> MARKS: So he didn't inflate the numbers or anything like to you to be dramatic and to make you change your plea?
>
> COLEMAN: He basically said take this fourteen or you can go to trial and that (inaudible) and get fourteen [sic], so I would advise you to take this fourteen years, he kept pressuring me to take it, and he had came over to the jail and talk to me and then came back to the court and they let me get a phone call, my mother, let her know what was going on…and just pressure.
>
> MARKS: So you did talk to your mother before you entered.

COLEMAN:  Yes."

Thus, the record reflects by Appellant's own admission that his trial counsel simply advised him of the alternative if he did not plead guilty.  Further, Appellant was permitted to call and consult with his mother before deciding whether to change his plea.  We have no doubt Appellant was under pressure.  However, there is nothing before us that indicates Appellant's counsel pressured him into entering a plea.  Appellant's counsel would have been remiss not to warn Appellant of the potential consequences if he chose not plead guilty, with respect to length of the possible sentence.

{¶ 30} We next consider Appellant's argument that his trial counsel failed to thoroughly interview important witnesses and disregarded evidence that would show his innocence.  In particular, Appellant argues that an individual by the name of Laken Woods would have testified Appellant was with her on the evening in question and was not involved in the crimes against the victim, Hamlin.  However, we find this argument disingenuous as the record reflects that Appellant initially made this argument at the hearing, but then later admitted he was present and part of the events that occurred on the night of the kidnapping and felonious assault, albeit allegedly against his will.  Appellant also conceded that his counsel initially spoke with Woods, but as the time for trial approached her story changed.

With regard to the other potential witnesses, Appellant conceded on cross examination the same was true as to two other potential witnesses, Rhetta Pierce and Lori Shaw. Appellant also argued he should be able to withdraw his guilty pleas because two witnesses had died since the incident occurred. However, he admitted on cross examination that he knew that one of the witnesses had died at the time he entered his pleas. Further, the State introduced testimony by Detective Roarke which indicated the other witness, Lori Shaw, was in fact, still alive.

{¶ 31} Based upon the foregoing, we cannot conclude that Appellant's trial counsel was deficient in his representation of Appellant. The record refutes Appellant's claims that he was pressured by his counsel to enter guilty pleas. Advising Appellant of the worst possible alternative to not taking a plea does not constitute deficient performance. Further, Appellant himself admitted during his hearing that although it initially appeared several individuals would testify on his behalf at trial, their stories changed as trial approached. Additionally, Appellant's argument that counsel failed to obtain alibi testimony through Laken Woods is not credible given the fact that Appellant has admitted to being present on the night in question. Accordingly, Appellant has not demonstrated he received ineffective assistance of counsel which led to the entry of his guilty pleas.

{¶ 32} We next consider the factors relevant to a determination as to whether the trial court erred in denying Appellant's motion to withdraw his guilty plea. First, we have already determined that Appellant's counsel was not ineffective and there is nothing in the record to suggest his counsel was not highly competent. Further, at the change of plea hearing, Appellant advised the trial court that he was satisfied with the advice of his counsel. Second, we consider whether Appellant was given a full Crim.R. 11 hearing before entering his plea. We already determined that he was, and that the trial court did not err in accepting his guilty pleas under Appellant's first assignment of error. Third, the record reflects that Appellant was given a full hearing on his withdrawal motion, where he was afforded the opportunity to be heard on his reasons for seeking to withdraw his pleas. Fourth, the record reflects the trial court gave full and fair consideration of Appellant's motion, but ultimately issued a denial, reasoning that:

> "The court has considered the evidence, the testimony presented in this matter, as well as all of the factors put forth in the defendant's motion to withdraw the plea. The court finds simply that the defendant's testimony not to be credible in this case. This appears to me to be nothing more than a simple case of buyer's remorse, and as such I will overrule the motions to withdraw the pleas."

These factors clearly weigh against granting Appellant's motion to withdraw his pleas.

{¶ 33} With respect to the additional factors to be considered, we note that Appellant's motion was made within a reasonable time and before sentencing and did set out specific reasons for the withdrawal. These factors weigh in Appellant's favor. Further, the record reflects Appellant had a full understanding of the nature of the charges and the possible penalties. This factor weighs in favor of denying Appellant's motion. Finally, with respect to the final factor, Appellant claimed in his motion to withdraw his pleas, and also claims now on appeal, that he is actually innocent of the charges.

{¶ 34} As noted above, the State did not present evidence regarding the charges to which Appellant pled during the plea change hearing and the trial court did not make a factual determination before accepting Appellant's plea. Thus, this Court is at somewhat of a loss as to the actual facts that form the basis of the charges to which Appellant pleaded guilty. While less than ideal from a reviewing standpoint, we must note that " ' where a defendant pleads guilty, with no claim of factual innocence, neither Crim.R. 11 nor the Constitutions of Ohio or the United States require the court to determine if there is a factual basis for the plea.' " *State v. Campanaro*, 4th Dist. Highland No. 97CA942, 1998 WL 961067, *4 (internal citations omitted). Appellant made no claim of factual innocence at the time he entered his pleas. As such, the trial court was not required to determine if

there was a factual basis for his plea.  That being said, we are still rather limited in understanding and analyzing Appellant's claims of actual innocence when we have no point of reference for the details related to the crimes he pled guilty to committing.

{¶ 35} At the hearing on the motion to withdraw, Appellant did not argue he was actually innocent of the possession of cocaine charge, nor does he make any argument regarding that charge on appeal.  With respect to the complicity to bribery and bribery charges, Appellant argued at the hearing that he did not do what he was accused of doing, and denied making calls on the recorded jail line to Rhetta Pierce where he offered her money to testify on his behalf.  As to the other bribery charge, he claimed it was Lori Shaw or Ashley Lewis who offered not to testify against him if he would pay them, and not the other way around.  However, the trial court heard these arguments made by Appellant at the hearing and simply found Appellant's testimony not to be credible.  This Court cannot conclude that the trial court's determinations regarding such factual and credibility issues were not based upon a sound reasoning process or were an abuse of discretion.

{¶ 36} Finally, with regard to the kidnapping and felonious assault charges, Appellant initially seemed to argue at his hearing that he believed he was innocent because there was no eye witness that placed him at the

scene, the victim did not identify him in a line-up, and there were inconsistencies in the discovery provided by the State. In our view, this argument seems to fall short of claiming Appellant was actually innocent because he didn't commit the crimes. Rather, it seems to be a general challenge to the evidence after the fact. Also, as referenced above, Appellant argued he had an alibi witness, but then stated he was actually present during the kidnapping and felonious assault. He argued he was simply at the wrong place at the wrong time and was held there against his will. Appellant's claims of actual innocence with respect to these charges are inconsistent at best, and the trial court determined they were not credible. We cannot conclude the trial court erred or abused its discretion in making this finding.

{¶ 37} Based upon the record before us and taking into consideration the above factors, we cannot conclude that the trial court abused its discretion in denying Appellant's motion to withdraw his guilty pleas. Instead, a review of the record indicates Appellant changed his mind after, in his own words, he had time to "reflect" on the discovery provided to him and his situation. Thus, we agree with the trial court that Appellant's desire to withdraw his guilty pleas is based upon a change of heart, which does not

constitute grounds to permit his guilty pleas to be withdrawn.  Accordingly, Appellant's second assignment of error is overruled.

{¶ 38} Having found no merit in the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.:   Concurs in Judgment and Opinion as to Assignment of Error I;
             Concurs in Judgment Only as to Assignment of Error II.
Harsha, J.:  Concurs in Judgment Only.

For the Court,

BY:   _____
      Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**